This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Goodman Beverage Company, Inc. ("Goodman Beverage"), appeals the decision of the Lorain County Court of Common Pleas, which granted summary judgment in favor of appellees, Kerr Beverage Company ("Kerr Beverage") and Ronald Strickmaker. This Court reverses.
 I. {¶ 2} Goodman Beverage and Kerr Beverage are both Ohio corporations engaged in the wholesale distribution of alcoholic beverages in the Lorain, Ohio area. Ronald Strickmaker is the executive vice president and secretary of Kerr Beverage.
 {¶ 3} On February 12, 1998, Goodman Beverage and Kerr Beverage entered into a written contract for the purchase and exchange of certain assets, including the right to distribute certain types of beer other than the Coors brand name in the Lorain, Ohio area. As additional consideration for the execution of the agreement, the parties executed an addendum in which Kerr Beverage agreed to provide Goodman Beverage with an option to purchase Kerr Beverage's right to distribute Coors' products in the counties of Lorain, Erie, Northern Huron and Eastern Ottawa, Ohio, if any one of three events occurred within twenty years from the date of the agreement. The addendum, entitled Addendum A, stated: "upon the occurrence of any event described herein, Kerr shall give notice to Goodman of the intended action." Addendum A further provided that, after receiving notification from Kerr Beverage, Goodman Beverage would have thirty days to notify Kerr Beverage, in writing, of its intent to acquire the Coors franchise.
 {¶ 4} During the spring of 1999, representatives of the Miller Brewing Company ("Miller") of Milwaukee, Wisconsin, approached representatives of Kerr Beverage regarding the possibility of an exchange or sale of franchises between Kerr Beverage and Miller, including the Coors and Miller beer distributorships. After several months of discussions, Kerr Beverage and Miller executed a letter of intent on or about July 9, 1999. On July 15, 1999, in order to comply with the terms of its distributorship agreement with Coors, Kerr notified Coors that it had signed the letter of intent with Miller. On August 13, 1999, Kerr Beverage provided written notice to Goodman Beverage that it had signed the letter of intent with Miller. On August 18, 1999, Goodman Beverage notified Kerr Beverage that it intended to acquire the Coors distributorship. On that same day, August 18, 1999, Kerr Beverage received correspondence from Coors informing it that Coors had elected pursuant to Section 8.5.2 of the distributorship agreement "to exercise its rights to exclusively negotiate for itself and for its future assignees with Kerr Beverage Company for the purchase of its business and assigns its right to negotiate to Andy Phillips [Miller Brands]."
 {¶ 5} Goodman Beverage then forwarded an asset purchase agreement to Kerr Beverage in accordance with the terms of Addendum A. On August 23, 1999, counsel for Kerr Beverage sent a letter to Goodman Beverage' counsel indicating that it would not devote any further time to its asset purchase agreement until it received notice that Coors had approved Goodman Beverage as a buyer.
 {¶ 6} The action underlying this appeal began when Goodman Beverage filed a complaint in the Lorain County Court of Common Pleas alleging breach of contract against Kerr Beverage and Miller. Goodman Beverage then amended its complaint to include an action for fraud against Kerr Beverage and Ronald Strickmaker in his capacity as corporate officer of Kerr Beverage.
 {¶ 7} After extensive discovery, Kerr Beverage filed a motion for summary judgment. Goodman Beverage filed a response to Kerr Beverage's motion for summary judgment and its own motion for summary judgment. In addition, Miller filed a motion to dismiss asserting that Goodman Beverage had failed to state a claim against it. The trial court granted Kerr Beverage's motion for summary judgment and denied Goodman Beverage's motion for summary judgment. The trial court also granted Miller's motion to dismiss.
 {¶ 8} Goodman Beverage timely appealed, setting forth two assignments of error. Concurrent with its appeal, Goodman Beverage filed a notice of dismissal as to Miller only.
 FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS."
 {¶ 9} In its first assignment of error, Goodman Beverage argues that the trial court erred in granting Kerr Beverage's motion for summary judgment. This Court agrees.
 {¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
 {¶ 11} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion.Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. "The nonmoving party may not rest upon the mere allegations and denials in the pleadings" but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 12} In this case, Goodman Beverage and Kerr Beverage each moved for summary judgment on the breach of contract claim and the fraud claims.
 Breach of Contract
{¶ 13} In its motion for summary judgment, Kerr Beverage argued that there could not be a breach of contract because Goodman Beverage failed to satisfy a condition precedent. Specifically, Kerr Beverage argued that it had not become obligated under Addendum A because Coors had not approved any contemplated transaction between Kerr Beverage and Goodman Beverage. Paragraph 6 of Addendum A states:
 "The purchase price shall be due and payable in cash upon Closing, which Closing shall take place within ten (10) days after the approval of the sale by the Coors Brewing Company and the State of Ohio, Department of Liquor Control, which approval shall be a condition precedent to Closing."
 {¶ 14} Kerr Beverage argued that, pursuant to paragraph six of Addendum A, Coors had to approve Goodman Beverage as a distributor before Kerr Beverage would become obligated to notify Goodman Beverage. Kerr Beverage argued that Goodman Beverage had failed to secure Coors' approval as a distributor and, therefore, Kerr Beverage was never obligated under Addendum A.
 {¶ 15} Goodman Beverage argued that Kerr Beverage breached the terms of Addendum A by failing to give timely notice to Goodman Beverage of its intent to sell its Coors franchise, by notifying Coors of its negotiations with Miller, by refusing to sign the asset purchase agreement that Goodman Beverage submitted, and by failing to give Coors notice of a potential sale to Goodman Beverage. Goodman Beverage argued that Kerr Beverage's failure to notify Coors of its agreement with Goodman Beverage precluded it from receiving Coors approval as a distributor.
 {¶ 16} Paragraph 1, Section iii, of Addendum A provides, in relevant part:
 "As additional consideration for the execution of the Agreement referenced above, Kerr agrees to sell to Goodman its right to distribute the products of the Coors Brewing Company of Golden, Colorado *** upon the occurrence, within twenty (20) years from the date hereof, of any of the following events:
"***
"***
 "iii. Kerr wishes to sell all or part of its existing Coors Brewing Company franchise as described on Exhibit 1 attached hereto."
 {¶ 17} While the parties disagree as to exactly when Kerr Beverage decided it wished to sell its Coors franchise to Miller, it is clear that on or about July 9, 1999, the date Kerr Beverage and Miller executed the letter of intent, Kerr Beverage wished to sell its Coors franchise. At that point, Kerr Beverage had a duty to notify Goodman Beverage of its wish to sell. In addition, Kerr Beverage had a duty to notify Coors of a potential sale to Goodman Beverage. A breach occurs upon any failure to perform a contractual duty. Kotyk v. Rebovich (1993), 87 Ohio App.3d 116,121. Kerr Beverage did not notify Goodman Beverage that it had executed a letter of intent with Miller until August 13, 1999, more than a month after executing the letter of intent.
 {¶ 18} Kerr Beverage's argument regarding the fact that Coors had to approve any potential sale of its distributorship rights excused it from responsibility in this case is not well taken. While, pursuant to the distributorship agreement between Miller and Kerr Beverage, any sale of Kerr Beverage's distributorship rights with regards to Coors' products must ultimately be approved by Coors, Kerr Beverage still had a duty to notify Goodman Beverage when it entered into negotiations with Miller regarding selling its distributorship rights. Whether or not Coors would have ultimately approved the sale of Kerr Beverage's distributorship rights to Goodman is irrelevant in determining whether or not Kerr Beverage breached the terms of Addendum A. The trial court correctly found that Kerr Beverage's actions triggered the addendum. However, the trial court erred in concluding that Coors' approval of Goodman as a distributor was a condition precedent to the addendum becoming an enforceable contract. The need for Coors' approval of any potential sale of its distributorship rights did not excuse Kerr Beverage's duty to notify Goodman Beverage that it wished to sell its Coors franchise as soon as it entered into talks with Miller. Therefore, the trial court erred in awarding summary judgment in favor of Kerr Beverage with regard to the breach of contract claim.
 Fraud {¶ 19} In its motion for summary judgment, Kerr Beverage argued that there could not be any claim of fraud because Goodman Beverage did not suffer any damage. Kerr Beverage argued that Goodman Beverage did not suffer any damage because Coors did not follow through with the sale to Miller.
 {¶ 20} In order to establish a claim for fraud, one must prove each of the following elements:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact,
"(b) which is material to the transaction at hand,
 "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
"(d) with the intent of misleading another into relying upon it,
"(e) justifiable reliance upon the representation or concealment, and
 "(f) a resulting injury proximately caused by the reliance." Burr v. Stark Cty. Bd. Of Comm'rs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus, citing Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169.
 {¶ 21} An action in fraud will only be found if all of the elements are present and "the absence of one element is fatal to recovery." Westfield Ins. Co. v. Huls Am., Inc. (1998),128 Ohio App.3d 270, 296. In order to attach personal liability upon a corporate officer for fraud, one must show that the officer knew the statement to be false, that the officer intended it to be acted upon by the parties seeking redress, and that the statement or concealment was acted upon to the injury of the party. Centennial Ins. Co. v. TannyInternatl. (1975), 46 Ohio App.2d 137, 141.
 {¶ 22} A review of Strickmaker's deposition reveals that he knew that Addendum A existed and that he concealed its existence from Coors. Strickmaker also testified that he made a conscious decision not to tell anyone at Goodman Beverage about Kerr Beverage's negotiations with Miller even though he knew that Addendum A existed.
 {¶ 23} Goodman Beverage argued in its motion for summary judgment that it was entitled to summary judgment on the claim of fraud because Kerr Beverage and Strickmaker made affirmative misrepresentations and concealed material facts to its detriment. Goodman Beverage argued that Kerr Beverage's and Strickmaker's misrepresentations prevented it from exercising its option rights under Addendum A and ultimately receiving Coors' approval as a distributor. Goodman Beverage stated its damages as "loss of its benefit of the bargain, lost profits, and lost synergistic value."
 {¶ 24} This Court finds that there exists a genuine issue of material fact regarding Goodman Beverage's fraud claims. Therefore, the trial court erred in awarding summary judgment regarding the fraud claims. Goodman Beverage's first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 25} In its second assignment of error, Goodman Beverage avers that the trial court should have granted its motion for summary judgment. This Court agrees in part, and disagrees in part.
 {¶ 26} Given this Court's disposition of Goodman Beverage's first assignment of error, this assignment of error is sustained as to the breach of contract claim and overruled as to the fraud claim.
 III. {¶ 27} Goodman Beverage's first assignment of error is sustained and its second assignment of error is sustained in part, and overruled in part. Accordingly, the decision of the trial court is reversed, and the cause remanded to the trial court for proceedings consistent with this opinion.
BAIRD, P.J. CONCURS.